## WICK et v ARNOLD et

Ohio Appeals, 7th Dist, Mahoning Co

No 2304.   Decided Oct 8, 1936

171

Manchester, Ford, Bennett & Powers, Youngstown, for appellants.

John W. Bricker, Attorney General, Columbus, Wm. J. Ford, Assistant Attorney General, Youngstown, and Hugh S. Jenkins, Youngstown, for appellees.

## OPINION

By NICHOLS, J.

The above entitled consolidated cases are in this court on appeal on questions of law. The judgment of the Common Pleas Court of Mahoning County affirmed an order made by the Tax Commission of Ohio, assessing for purposes of taxation for the year 1931 respective equitable and beneficial interests of the above named appellants in and to certain shares of stock at that time and theretofore held in trust in two certain trusts set up and established for the benefit of appellants in the city of Youngstown. By the appeal two questions are raised:

(1) As to the proper assessment of intangible taxes upon the equitable interests of appellants in certain shares of the common stock of The Youngstown Sheet & Tube Company held by trustees for the benefit of appellants on January 1, 1932;

(2) As to the proper assessment of intangible taxes upon the equitable interests of appellants in certain shares of the common stock of The Wick Building Company and The Myron C. Wick Estate Company held by trustees for the benefit of appellants on January 1, 1932.

—1—

During 1930 The Youngstown Sheet & Tube Company declared dividends of $2.50 per share on all of its common shares. The trustees of the trust created for the benefit of appellants refused to receive these dividends, which were declared in 1930, until November, 1931, and in November, 1931, the trustees paid these dividends to ap-

pellants. During 1931 The Youngstown Sheet & Tube Company declared and paid dividends to holders of its common shares in the amount of $2.75 per share. These 1931 dividends were received by the trustees and paid to the appellants in 1931.

In 1932 appellants made their tax returns upon the basis of the dividends declared and paid by The Youngstown Sheet & Tube Company during 1931, and omitted from the returns the dividends declared in 1930 but not paid until 1931. The intangible tax law became effective July 1, 1931. The Tax Commission of Ohio assessed against appellants additional taxes in the amount of five per cent (5%) of the dividends declared in 1930, payable in 1930 but which were not received by appellants until November, 1931, this assessment being sustained by the Common Pleas Court of Mahoning County on appeal.

The question presented to this court is one involving the construction of certain provisions of the General Code in relation to listing and assessing personal property for taxation.

The Act in question is entitled "An Act providing for the levy of taxes on intangible property as classified rates and for the assessment of tangible property for taxation * * *."

So far as pertinent to the decisions of the questions involved in this action, the following sections of the General Code provide as follows:

"Sec 5328-1 GC. All * * * investments of persons residing in this state shall be subject to taxation * * *."

"Sec 5323 GC. The term * * * 'investments' as * * * used in this title, includes * * * the following:

"Shares of stocks in corporations, * * *.,

"All equitable interests, life or other limited estates and annuity interests in any investment hereinbefore described, or in any fund made up of any such investments, wherever located."

"Sec 5370 GC. Each person * * * shall * * * return all the * * * taxable property of which he is the owner * * * excepting that required by this section or by the regulations of the commission to be returned for him by a fiduciary; but nothing herein shall be so construed as to authorize any person to omit from his return of taxable investments owned or held for his benefit by a fiduciary * * *."

After defining in what cases taxable property shall be returned by certain fiduciaries, §5370, GC, further provides:

"All the taxable property, excepting investments, of a person for whose benefit property is held in trust shall be returned by the trustee; * * *."

Construing the provisions of §5370, GC, we conclude that "investments" held in trust by one person as trustee for the benefit of another, shall be returned by the beneficiary and not by the trustee, except where the beneficiary of the trust is "a minor, an idiot or an insane person." ▆▆▆▆ Hence intangible property classed as investments by §5323, GC, is to be returned for taxation by the beneficiary. This was evidently the construction placed upon these statutes by the appellants, since the appellants, who were the beneficiaries, and not the trustee, made the return for taxation in the year 1932.

Sec 5388, GC, provides:

"* * * personal property shall be listed and assessed at seventy per centum of the true value thereof, in money, on the day as of which it is required to be listed, * * * In listing investments, the amount of the income yield of each for the calendar year next preceding the date of listing shall, excepting as otherwise provided in this chapter, be stated in dollars and cents and the assessment thereof shall be in the amount of such income yield; but any property defined as investments in either of the first two sub-paragraphs of §5323 GC which has yielded no income during such calendar year shall be listed and assessed as unproductive investments, at the true value thereof, in money, on the day as of which such investments are required to be listed."

Here it may be conceded that the tax on investments, whether such investments do or do not yield an income, ▆▆▆▆ is a property tax, not an income tax, and that the "income yield" is merely a norm to be used in fixing the amount of the property tax.

Sec 5638, GC, provides that the rate of the tax shall be as follows:

"Investments, five per centum of income yield, unproductive investments, two mills on the dollar; * * *."

For the purpose of determining the amount of the property tax on income yielding investments, the Act provides that the person listing such investments for taxation shall state in dollars and cents the amount of the income yield. Income yield must, therefore, be construed to mean in case of such investments the amount received as income from such investments by the beneficiary, although in this case the amount received as income by the beneficiary was the same amount received as income by the trustee. In order that there may be no doubt as to the meaning of the term "income yield," §5389, GC, provides:

" 'Income yield' as used in §5388 GC and elsewhere in this title means the aggregate amount paid as income by the obligor, trustee or other source of payment to the owner or owners, or holder or holders of an investment, whether including the taxpayer or not, during such year, and includes the following:
"* * * in the case of shares of stock, the cash dividends so paid; * * * in the case of equitable interests, the cash distributions of income so made."

When we consider that under certain circumstances the beneficiary is to make the tax return and under other circumstances, to-wit, where the beneficiary is "a minor, an idiot or an insane person," the return is to be made by the trustee, we conclude that the only significance of the words "whether including the taxpayer or not," is to make sure that the taxes be paid upon the entire amount of the income yield actually received by either the trustee or the beneficiary, and does not mean that one who happens to own income-yielding investments on the 1st day of January in any particular year shall pay five per centum on the entire amount of the dividends paid by a corporation upon its stock, except to the amount of such dividends actually received by the person making the return. This interpretation of the statute is made clear by the provisions of §5372-2, GC, which authorizes the taxpayer, if he so elects, in lieu of listing his income-yielding investments in the manner otherwise prescribed by the Act, to file with his return a verified copy of his federal income tax return. The federal income tax returns would, of course, only list income actually received by the taxpayer. ,

Referring again to the provisions of §5388, GC, we conclude that for the purpose of assessing the investments in ▆▆▆▆ question the beneficiaries were required to set forth the amount of the income yield to such beneficiaries for the calendar year next pre-

ceding the date of listing, to-wit, the calendar year 1931, and by §5389, GC, such "income yield" means the aggregate amount paid to such beneficiary by the trustee who held this stock for the benefit of such beneficiaries. Clearly, the amount paid by the trustee to the beneficiaries in the year 1931 included the dividends declared by The Youngstown Sheet & Tube Company in the year 1930, since it is conceded in the record that these dividends were paid by the trustees to the beneficiaries in November, of 1931.

That the tax is to be determined by the amount of the income paid by the trustee to the beneficiary is further made clear by the provisions of §5392, GC, which provides that if any trust is created or availed of "for the purpose of preventing the assessment of the equitable interests of the resident beneficiaries on the basis of income yield, as provided in this chapter, the commission, * * * shall assess the amount representing the aggregate assessment of such equitable shares, so prevented, in the manner provided in this section. The fact * * * that the trustee has discretion to pay and distribute the income of the trust property to or for the benefit of such resident beneficiary, shall be prima facie evidence of a purpose to prevent the assessment of the equitable shares of the resident beneficiaries upon such basis."

But it is claimed by appellants that this construction has the effect of saying that these appellants are required to pay taxes upon a different basis than other owners of stock in The Youngstown Sheet & Tube Company, who received in 1930 the dividends declared and paid by this company in 1930, and that, therefore, the provisions of the Act are unconstitutional if given the construction we have herein indicated.

In the case of **Rowe v Braden et, Tax Commission of Ohio, 126 Oh St, 533,** it was held that **§2 of Article XII of the State Constitution** was amended for the specific purpose of giving the legislature the power of classifying personal property for the purposes of taxation and under this amendment to the Constitution the legislature was authorized and empowered to provide for the taxation of equitable interests in stocks, bonds, and other property classed as investments in the manner set forth in the above quoted statutes.

It is true that stockholders of The Youngstown Sheet & Tube Company who received their dividend checks in 1930 could not be taxed on the basis of such dividends in 1932, but the trustees who held the stock in 1932 for the benefit of the appellants were in the same position as all other stockholders and could have received these 1930 dividends in 1930, but by their own election they declined to receive the same at a time when the income yield from these shares would not have been taxable. It is not the Act which creates the seeming inequality complained of by appellants, but it is the election of the trustees, presumably acting with the consent of the beneficiaries, which places the beneficiaries in the position whereby these 1930 dividends must be used as the basis upon which to determine the amount of the tax for the year 1931. The act operates equally upon all persons who may have refused to receive their 1930 dividends ▉▉▉▉ prior to the effective date of the intangible tax law, and hence there is no inequality in the Act as construed by us.

The above quoted language of the various sections of the Act is plain, and we are, therefore, required to ▉▉▉▉ give to this language its usual acceptation. It may be conceded that under certain circumstances the income yield of corporate stock may be said to be the amount of dividends declared and paid by the corporation generally to its stockholders, but this is not the definition of "income yield" in this Act.

We find and hold that the Common Pleas Court did not err in affirming the assessment of intangible taxes made by the Tax Commission of Ohio upon the equitable interests of appellants in the shares of the common stock of The Youngstown Sheet & Tube Company held by the trustees for the benefit of appellants on January 1st, 1932.

Among the assets held in trust for the benefit of appellants were certain shares of the common stock of The Wick Building Company, a corporation, and certain shares of the capital stock of The Myron C. Wick Estate Company, a corporation. The appellants were beneficiaries entitled both to distribution of the income and of the principal of these trust estates.

The Wick Building Company was organized in 1910 with a capitalization of $235,000 and a paid in surplus of $235,000. In the year 1927, $14,983.81 was added to surplus on the books of the company to correct the opening entry as of the commencement of business and, as so adjusted, the books of the company showed a paid in surplus as of November 30, 1910, in the amount of $249,983.81. During the fiscal year ending November 30th, 1911 the com-

pany earned net profits of $12,055.97, but paid dividends for the period of $18,550, the excess of dividends paid over net profits earned, to-wit, the sum of $6,494.03 being deducted from the paid in surplus, reducing this surplus to $243,489.78. The following year the company earned a net profit of $15,030.02, and no dividends being declared for that year, the surplus account was brought up to $258,519.80. During the subsequent years, down to December 31, 1931, the company earned substantial net profits in each year except the year 1919, in which year the company suffered a net loss of $15,917.50.

During all the years beginning with the year 1913 to and including the year 1931, the company paid substantial dividends, sometimes such dividends being less than the net earned profits for the year, but in many instances the dividends paid were greatly in excess of the net earned profits, so that at the close of the year 1928 the surplus account had been reduced to $154,-686.78, and the profit and loss surplus account showed a deficit of $95,297.03.

During the years 1929, 1930 and 1931, the net profits earned by the company exceeded the amount of the dividends paid, so that at the close of the year 1931 the net surplus had increased to $161,875.27 and the profit and loss surplus deficit account had been reduced to $88,108.54. In the year 1931 the company earned a net profit of $29,861.65 and paid dividends in the amount of $28,200.

It is the claim of the appellants that the dividends paid to them in the year 1931 are not taxable because it was the duty of the company first to apply the net earnings for the year 1931 to reduction of the deficit in the profit and loss surplus account, and that although the company earned in the year 1931 more than sufficient to pay the dividends, the distribution of dividends made in that year were in reality distribution of surplus and not earnings, and, therefore, not taxable. We can not agree with this contention. The company did not apply the net earnings for the year 1931 toward the restoration of the surplus account, but the company chose to pay out these earnings as dividends, and we hold that the same were "income yield" upon which to base the amount of the tax.

In this connection it is noted that the agreed statement of facts shows that the payment of dividends by this corporation was acquiesced in by all the share holders, and there was not at the time of paying such dividends, nor has there been at any time thereafter, any reasonable ground for believing that the corporation was unable, or would be thereby rendered unable, to satisfy its obligations and liabilities to its creditors. It may be admitted that a corporation may distribute its capital assets among its share holders in the form of liquidating dividends, provided its creditors are not prejudiced thereby, and that such liquidating dividends, representing merely a return of their original paid in surplus, are not "income yield" on the shares and would not serve as the measuring stick for taxing an investment. But we see nothing in the provisions of §8623-38, GC, which, in the admitted financial condition of this company, required the earnings for the year 1931 to be applied to the restoration of the voluntarily reduced surplus account, and especially in view of the fact that all of the stockholders of this company acquiesced in the payment of dividends out of these earnings.

Conceding the right of the corporation to distribute its paid in surplus to its stockholders, and having in years prior to 1931 voluntarily distributed a portion of this surplus, we think the condition of this company in the year 1931 was as though there had never been a greater paid in surplus than that remaining after the distribution of a portion thereof. Such reduction in the paid in surplus account having been brought about by voluntary distribution thereof with the consent of all the shareholders it is as though there never had been a greater paid in surplus than that remaining in the account at the end of the year 1931.

If the contention of appellants were to prevail, it is easily seen that in July of each year the company, with the consent of all the stockholders, might declare a dividend payable out of surplus and thereafter at the end of the year restore the deficiency thus created by applying its net earnings to the surplus account and whereby no tax would ever be payable upon the basis of "income yield," and all that a corporation would have to do to permit its shareholders to escape taxation would be to create a paid in surplus greater than the amount which might reasonably be earned in any year, and at the same time permit the stockholders to receive dividends equal to that which they would have received had there been no paid in surplus.

Without a further analysis of the books of this company, as shown by the exhibits attached to the record and as part of the

agreed statement of facts. it is apparent that the dividends paid in 1931 were less than the net profits earned by the company for that year, and such dividends paid out of net profits are income yield for the year 1931 and properly used as the basis for computing the tax payable by the beneficiaries on their stock in this company.

We need not further analyze the profit and loss account of The Myron C. Wick Estate Company except to say that the same situation obtains as in The Wick Building Company. The net profits earned during the year 1931 by The Myron C. Wick Estate Company being $18,250.39 and the dividends paid amounting to $16,500.00, the dividends paid being less than the earned income for the year are the proper basis upon which to calculate the tax on the earned income received by the beneficiaries upon the stock of this company.

We find no error in the judgment of the Common Pleas Court wherein it affirmed the judgment of the Tax Commission and that substantial justice has been done.

Judgment affirmed.

CARTER and ROBERTS, JJ, concur.